ADVANCE RUMLEY THRESHER COMPANY, Respondent, v. BRIGGS HARDWARE COMPANY, Appellant.

Springfield Court of Appeals, November 25, 1918.

1. **APPEAL AND ERROR:** Presumption Favoring Court Below: New Trial. Where trial court did not specify ground or grounds on which it granted new trial, action will be upheld if supportable on any ground properly raised in motion.

2. **SALES:** Express Conditional Warranty: Exclusion of Implied Warranty. An express conditional warranty of the goods sold excludes an implied warranty on the same subject.

3. ———: Warranty of Material and Service: Equivalent of Implied Warranty. Express warranty of cream separators, that they were made of good material and would do good work if properly set up and adjusted, is as broad as an implied warranty of fitness and suitableness for work or service, and without difference in legal effect.

4. ———: Warranty: Notice of Breach. Under warranty of cream separators that they would do good work when properly set up, contract also providing buyer agreed to examine on arrival and notify of shortage or defective parts, buyer, a retail dealer, *held* not required to give notice machine would not do good work until it had been actually tested on resale.

5. ———: Implied Warranty: Notice of Breach. As a general rule, no notice is required of breach of an implied warranty.

6 ———: Breach of Warranty of Machines: Individual Cases. In action for price of cream separators, defended for breach of express warranty that when properly set up they would do good work, evidence not warranting inference that all machines were necessarily worthless, question whether it would do good work should be applied to each individual machine.

Appeal from Newton County Circuit Court.—*Hon. Chas. L. Henson*, Judge.

AFFIRMED.

*O. L. Cravens* for appellant.

*Hubbert & Hubbert* and *Ellis, Cook & Dietrich* for respondent.

BRADLEY, J.—This is an action on account to recover a balance due for cream separators sold by plaintiff's predecessor to defendant. On trial before the court and a jury, defendant prevailed, but the trial court sustained a motion for a new trial, from which defendant appealed.

The Rumley Products Company was the manufacturer of the cream separator at the time of the sale to defendant. Subsequently the manufacturer transferred its business and accounts to plaintiff; and it is agreed that plaintiff is responsible as would be the vendor. The separators were sold under a written express warranty contained in the written order, the pertinent terms of which order are as follows: "(2.) The within named goods are warranted to be made of good material and to do good work when properly set up and adjusted. If any parts prove defective, the seller will have the right to replace them, and no goods are to be condemned on account of such defects if properly made good. (3) Purchaser agrees to examine all goods on arrival and notify the seller of any shortage or defective parts and give reasonable time to replace them, or the seller is not to be held responsible for any shortage or defects."

The account sued on was originally $1094.35, on which had been paid $506.02, leaving balance of $588.33. The defense was that the separators were wholly unfit for the purpose intended and that there was consequently a failure of consideration. The defendant had, in the present and a prior order, ordered fifty of these separators from the vendor, and defendant's answer sets up that all these were wholly worthless and unfit for the purpose intended, while the evidence tended to establish that at least enough were shown to be

worthless to equal or overcome the balance due on the account. Defendant's evidence was directed to establishing the proposition that of all the separators it had handled on both orders enough of them were wholly worthless to equal or exceed the balance due on account. The controversy hinges about the question of warranty; defendant contending that in addition to the written express conditional warranty that there was a separate implied warranty of fitness. There was much evidence on both sides touching the fitness, quality and work of the separators; defendant's evidence tending to show that all the separators bought did not properly separate the cream from the milk, and were for all practical purposes useless; while on the other hand the evidence adduced by plaintiff in this respect tended to show that the separators were of good quality and rendered good service. The court did not specify the ground or grounds upon which it granted a new trial, therefore if its ruling in that respect can be supported or upheld on any ground properly raised in the motion for a new trial its action therein will be upheld. [Kelly et al. v. City of Higginsville, 185 Mo. App. 1. c. 59, 171 S. W. 966; Peper v. Peper, 214 Mo. 260, 146 S. W. 408; Haven v. Railroad, 155 Mo. 216, 55 S. W. 1035; Candee v. Railroad, 130 Mo. 142, 31 S. W. 1029; Wears v. Weisburg, 163 Mo. App. 580, 146 S. W. 818.] There was no dispute about the account, and the defendant assumed the burden and offered its evidence first. On behalf of defendant the court instructed the jury in substance and to the effect that if they found that the separators were not made of good material or would not do good work in separating cream from milk when properly set up, and were not usable or worth anything for the purpose intended, *from causes other than defective parts* (Italics are ours) that they would return a verdict for the defendant, provided that the number of separators found to be worthless exceeded or equaled the balance sued for. In a separate instruction number two the court on behalf of defendant instructed that the

seller of the cream separators in question "impliedly warranted that the separators were mechanically and reasonably suitable for separating cream from milk. Therefore, if you believe and find from the greater weight of the evidence that the separators in question were not mechanically and reasonably suitable for separating cream from milk and from causes not arising by reason of defective parts, and were of no value for such purposes, then the consideration for said separators has wholly failed and your verdict should be for the defendant as to such separators."

The plaintiff requested instructions to the effect that, though the jury found that the separators were defective and did not fill the conditions of the written express warranty, yet the contract of purchase and warranty accorded the seller the right to replace any parts that might prove defective and that the seller was entitled to such reasonable notice as would apprise it of any defect that may have appeared when the defendant received the separators or afterwards; and that unless they found that reasonable notice was given that the jury could not make any allowances to defendant against plaintiff for any separator where notice had not been given. The court over plaintiff's objections and exceptions modified this instruction by adding "unless you find and believe from the greater weight of the evidence that the machines were not suitable for separating cream from milk as set forth in instruction No. 2," which is substantially set out, supra. Another instruction requested by plaintiff and applicable to all the machines was asked, and given, but modified as above.

The proposition that an express conditional warranty excludes an implied warranty on the same subject is well settled in this State. [Bank v. Wood, 189 Mo. App. 62, 173 S. W. 1093; Gaar-Scott & Company v. Nelson, 166 Mo. App. 51, 148 S. W. 417; Acme Harvesting Machine Company v. Gasperson, 168 Mo. App. 559, 153 S. W. 1069; Fairbanks Morse & Company v. Baskett, 98 Mo. App. 53, 71 S .W. 1113; Hope v. Light

foot, 193 S. W. (Mo. App.) 624; Boyer v. Neel, 50
Mo. App. 26; Wood Machine Company v. Bobbst, 56
Mo. App. 427.] The language of the warranty that
the separators were made of good material and would
do good work when properly set up and adjusted is
as broad and as comprehensive as an implied warranty
of fitness and suitableness for the work or service for
which the separators were intended; and there is no
difference in legal effect. [Machine Company v. Gasper-
son, supra]. The separators were, of course, intended
to render reasonable service in separating cream from
milk. They could not do good work unless they render-
ed reasonable service in that respect; and it is not
contended that vendor did not know the purpose for
which the separators were intended.

As plaintiff construes the warranty it would not
be liable for any breach thereof unless notice was given
of any defects immediately after arrival. In order for
defendant to avail itself of the warranty under this
construction it would have had to test out each and
every separator upon arrival to ascertain whether "it
would do good work." We do not consider the war-
ranty susceptible of such construction. Vendor knew
that the defendant was a retail dealer, and that it bought
the separators for the purpose of resale. It would be
unreasonable to say that the warranty required the
retail dealer who bought the separators for resale
to put each and every separator to the actual test of
separating cream from milk before he could rely upon
the warranty gives by vendor. Such a construction
would result in practical effect to the almost complete
destruction of any express warranty; and if the vendee
may not rely upon an implied warranty then he is
without remedy, no matter how useless the separator
may be when put to actual test and use. Paragraph two
of the warranty provides the goods are warranted to
be of good material and to do good work when prop-
erly set up and adjusted, and that. if any parts prove
defective the seller will have the right to replace them,
and that no goods are to be condemned for defects if

such defects are properly made good; while paragraph three provides that the defendant agrees to examine the separators on arrival and notify the seller of any *shortage* or *defective parts,* and give reasonable time to replace them; failing in this the seller is not to be held responsible. But it will be noted that there is no provision as to when notice shall be given if a machine though properly set up and adjusted fails to do good work. The warranty is silent on this point. If *shortage and defective parts* cover the same ground as good work when properly set up and adjusted, and notice of all defects must be given upon arrival, then the warranty on its face is a fraud. We think that a sensible and just construction of this warranty is that if on arrival of a separator or separators there was a shortage of some part, or some part thereof was broken or apparently defective, that the defendant was required then and there to notify the plaintiff of such shortage, breakage or defects; but if there were no apparent shortage, breakage or defects about a separator on its arrival, then defendant was not required to give any notice that the machine "would not do good work" until such machine had been put on actual test, regard being had for the length of time of course after arrival before resale and actual test; but there is no question of that character here.

Defendant says that it sold the separators to its patrons and that as complaints were made that the separators would not do good work that it notice thereof to the vendor. The general manager of defendant testified: "We made trips to the country to investigate complaints to learn the reason why the separators we had sold would not do good work; when we received a complaint we would 'practically in every case go right out with out car and visit the machine and see if it had anything out of adjudgment and then we would report them to the company and ask them to send a man down; in a great many cases they sent a man." These notices that certain separators would not do good work were

given after the receipt of the separators by defendant; and after it had sold to a customer and the machine put to actual test; but notwithstanding that notice was not given in accord with plaintiff's construction of the warranty, the vendor in many instances of complaint sent a man familiar with the separators in an endeavor to adjust and remedy any existing troubles, thus showing to our mind that the vendor construed the warranty as we have, viz: That notice that a machine would not do good work provided for in the warranty might be after the separator had been put to actual test. Defendant, misconstruing the effect of the written express warranty as to notice sought to inject into the issues the proposition that in addition to the written express conditional warranty there was a separate and distinct implied warranty that the separators were reasonably fit for the purposes for which they were intended. This feature no doubt was injected in order to avoid the effect of the fact that it had only given notice after a machine was put to actual test. As a general rule no notice is required for the breach of an implied warranty. [Acme Harvesting Machine Company v. Gasperson, 168 Mo. App. 559, 153 S. W. 1069, 35 Cyc. 423.]

This is not a case like Fairbanks Morse & Company v. Baskett, 98 Mo. App. 53, 71 S. W. 1113, and other similar cases where the buyer selects the article and gets what he selects and therefore cannot complain. An examination of that class of cases usually discloses the machine or instrument in controversy was not machanically deficient, but was lacking in power or other quality required for the purpose for which the buyer intended to use it. The instructions given for the defendant went on the theory that there was an implied warranty of fitness and therefore no notice required, while the instruction as requested by plaintiff, minus the modifications, went on the theory that notice was required when defendant received the machine.

The evidence is not such as to warrant the inference that if any particular machine or machines were wholly

worthless that other machines were necessarilly likewise, worthless, therefore, the question of whether a separator "would do good work" should be applied to each individual machine.   Other questions raised by counsel we do not deem it necessary to discuss as our construction of the express warranty makes the issues simple.

The question of notice required as we construe the contract was not submitted to the jury by either side, and in order that this question may be properly submitted the action and judgment of the trial court in granting a new trial is affirmed. *Farrington, J.,* concurs. *Sturgis, P. J.,* not sitting.