## Magnavox Company *v.* Royson Engineering Company, Appellant.

Argued March 24, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Roland J. Christy,* for appellant.

*Charles Blasband,* and *Blasband and Mogul,* for appellee.

OPINION BY MONTGOMERY, J., April 13, 1961:

This is an action in assumpsit to recover $4,709.98 for thermal cutouts which appellee buyer had received from appellant seller over a period of twenty-two months beginning March 8, 1954. These devices were used in the construction of ship radios. The cutout is connected to the antenna or in the aerial of the ship's radio receiver and is to prevent the burning out of the receiver's input from too strong a signal caused by close proximity of other ships. The contract called for 2,052 cutouts at $6.00 each to be shipped beginning in March, 1954, and ending January, 1955. Because of alleged defects 1,095 cutouts were returned from October, 1955, to March 6, 1956. These returns were not identified as to date when received but could have been held as long as 22 months before appellee returned the devices as defective.

Plans and specifications were provided by the appellee. Samples were submitted and checked and defects were pointed out, with a request that appellant correct them and proceed with production. From time to time beginning shortly after units were sent to the appellee, some units were returned for replacement. From March, 1954, through January, 1956, defective units were returned and accepted by the appellant. Because units were not meeting specifications, several conferences were held between appellant and appellee. During all this period defective units were accepted back without objection. Since units continued to be unworkable, appellee had to cancel its contract and seek another source of supply.

The contract of purchase provided that the laws of the State of Indiana should govern the transaction. The Uniform Sales Act was then in force in Indiana. Burns Ind. Stat. Vol. II. It was further provided: "Notwithstanding prior payment to obtain cash discount, goods subject to Magnavox inspection may be

rejected and returned (with charge for transportation both ways) if inspection shows goods are not strictly in accordance with Magnavox specifications, drawings or samples. This clause applies to any goods unpacked at any time after receipt of such shipment. . . ."

Under the Uniform Sales Act, §48, the mere retention of goods by the purchaser after a lapse of a reasonable time by itself is not sufficient to constitute an acceptance. In regard to treating the return of purchased goods for breach of warranty, the act provides that retention must be without intimating to the seller that the purchaser has rejected them. The fact that the appellee rejected many of the units and notified the appellant of the defects is clear from the record. The concern evidenced by conferences and correspondence caused by the constant rejection of units is far more than the mere intimation required by the act. A comparison of the dates of return and shipment dates set forth in the record reasonably could lead to the conclusion that rejection and return were indeed timely for at least some of the cutoffs. The appellant has no cause for complaint because the Judge submitted the case to the jury upon his conclusion that the facts did not admit of only one inference. It is well-settled law that, where the facts are undisputed, the question of whether there has been an unreasonable delay in inspecting goods purchased and advising the seller of imperfections is one of law for the Court. *Crunden Martin Mfg. Co. v. Turner*, 274 Pa. 425, 118 A. 365; *Comfort Springs Corporation v. Allancraft Furniture Shop, Inc.*, 165 Pa. Superior Ct. 303, 67 A. 2d 818. However, where the facts are disputed, what is a reasonable time within which the purchaser must exercise the right to return goods is for the jury. *McGlinn v. Jackson*, 86 Pa. Superior Ct. 562.

A purchaser may not recover from the seller for consequences that reasonably could have been avoided

by the purchaser. Appellant contends that, since the purchaser knew or should have known of the alleged defects, the fact that it did not start making a wholesale return of the goods for 19 months after the first shipments and the fact that appellee failed to make reference to particular shipments prevent appellee's recovery. The thermal cutouts involved in this case have no general commercial or salvage value. The appellant claims that, if Magnavox had given timely notice of the alleged defects, Royson would have stopped the manufacture of the cutouts and thereby prevented the loss alleged by Magnavox and, since they did not give such timely notice, the appellee is responsible for any loss incurred. There is no merit in this argument. The appellant was well aware of the defects and of the contract provisions giving the appellee the right to cancel any portion of the order if not fulfilled as specified.

Where a seller acquiesces in the return by the purchaser of defective devices, accepts the return without complaint, and continues to produce and ship additional devices to the purchaser, the seller has waived its right to object to the return of the devices as untimely and is estopped from raising that defense. By its failure to object to the return of the defective items and by continuing to ship units, the appellant obviously misled the appellee into belief that it would continue to accept the return of all defective devices. Any delay in rescinding the contract was occasioned by appellant's attempts to remedy the defects and prevent rescission. The appellant can not now be permitted to take advantage of its own acts which misled the appellee. *Hobart Manufacturing Company v. Rodziewicz*, 125 Pa. Superior Ct. 240, 189 A. 580.

Appellant contends that it was error for the trial judge to refuse the appellant the right to cross-examine Mr. S. Norman Best, appellee's engineer, concerning a

letter from Radio Corporation of America to Magnavox, which discussed repeated testings and inspection procedures. If offered for the truth of its contents, the letter is obviously hearsay evidence. If offered for any other reason, it is irrelevant. Radio Corporation of America had nothing to do with the contract in issue. No matter what inspection procedures were used, the units had to meet specifications and work. Mr. Best was an engineer and was not the administrative officer or otherwise in charge of paper work flowing between Magnavox and Royson. On direct examination, he testified that testing was done under his supervision. Cross-examination of witnesses should be confined to matters upon which they are examined in chief. The scope of limitation is largely within the discretion of the trial judge and his action will not be reversed in the absence of an abuse of discretion. *Pantano v. Zamer Motor Sales Company*, 170 Pa. Superior Ct. 317, 85 A. 2d 681.

The lower court was correct in refusing the improper request for special findings. The appellant requested the court to ask the jury to find specially dates of rejection and dates of return on twenty separate shipments of units. Requests for special findings should be relevant to the issue between the parties, apt to be helpful in determining it, and readily comprehensible and susceptible of a brief reply. *Feigenbaum v. Prudential Insurance Company of America*, 144 Pa. Superior Ct. 412, 19 A. 2d 542. As the lower court stated, the request took the form of a school examination. It was unrealistic to expect jurors to keep perfect track of so many shipments involving 1359 separate units. For each item there could be a date of rejection and a separate date of return, a possibility of 2600 dates being involved. Even had this been done, its relevance would be questionable.

The lower court was correct in refusing to read the appellant's points for charge. The requests were amply covered in the court's charge respecting the Sales Act and the terms of the contract. The defendant's request for charge, that, if the defendant (appellant) made the thermal cutouts according to the same specification and standards as those made for Radio Corporation of America, then its verdict must be in favor of the defendant (appellant), had nothing to do with the contractual relationship in issue and properly was denied.

As the lower court stated, the appellant in effect wanted the jury to divide the case into 22 separate shipments and make a decision on each. This, of course, would be an impossible and useless task. Units were not returned by shipment and there was no duty to keep shipments intact. The appellant has failed to show that the return of the units under the circumstances was not within a reasonable time for most shipments; and as for the others, the appellant by accepting the returns without complaint and shipping additional units has acquiesced in the manner of rejection and return and is estopped from raising the defense of untimeliness.

Judgment affirmed.